IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIE SABACH<br>23 Farmhouse Road<br>Mountain Top, PA 18707 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff,<br>v. | : <br> : <br> : <br> : | No.: _____ |
| NANTICOKE REHABILITATION<br>AND HEALTHCARE LLC, d/b/a<br>LAKEWOOD REHABILITATION &<br>HEALTHCARE CENTER<br>147 Old Newport Street<br>Nanticoke, PA 18634<br>and<br>CENTURY HEALTHCARE<br>CONSULTING<br>147 Old Newport Street<br>Nanticoke, PA 18634 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Julie Sabach, by and through her undersigned counsel, hereby avers as follows:

### I.   INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Nanticoke Rehabilitation and Healthcare LLC, d/b/a Lakewood Rehabilitation & Healthcare Center and Century Healthcare Consulting (collectively "Defendants") for violations of the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, *et. seq.*) and applicable state (whistleblower-related) laws. In particular, Plaintiff alleges that she was wrongfully terminated from her employment by Defendants.

## II.   JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

## III.   PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Nanticoke Rehabilitation and Healthcare LLC, d/b/a Lakewood Rehabilitation & Healthcare Center ("Defendant LRHC") is a skilled nursing, full-service rehabilitation, and long-term care provider headquartered and operating from the above-captioned address.

8. Century Healthcare Consulting ("Defendant Century") is a legal entity operating LRHC and other similar facilities in different geographic areas of Pennsylvania.

9. Defendants LRHC and Century are properly considered Plaintiff's single, joint and/or integrated employer, as: (a) Plaintiff was issued policies by both entities; (b) Plaintiff was

supervised my management of both entities; (c) all directions and oversight of Defendant LHRC are by and though Defendant Century; and (d) these entities have overlapping management, use of resources, and operate as a single enterprise.

10. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV.   FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff was hired by Defendants on or about December 12, 2016; and in total, Plaintiff was employed by Defendants for approximately 8.5 years (until termination in April of 2025).

13. Plaintiff was employed by Defendants as a Registered (and Charge) Nurse during her period of employ.

14. Plaintiff physically worked for Respondents at Defendant LRHC (in Nanticoke, PA).

15. Defendant LRHC is one of several locations operated, overseen and managed by Defendant Century. Upon information and belief, Oak Ridge Rehabilitation & Healthcare Center, Mountain Top Rehabilitation & Healthcare Center, Forest Hills Rehabilitation & Healthcare Center, Meadow View Rehabilitation & Healthcare Center, and Birchwood Rehabilitation & Healthcare Center (among potentially others) are also managed, operated and overseen by Defendant Century.

16. Plaintiff typically worked 2, 16-hour shifts on weekends (totaling 32 hours) but because of the strenuous schedule was paid for a 40-hour workweek.

17. From 3 PM – 11 PM, Plaintiff was typically supervised by Stephanie Schoefield ("Schoefield"). From 11 PM to 7 AM, Plaintiff was typically supervised by Yvonne Bruzza ("Bruzza") and Susan Drozda ("Drozda").

18. From a higher-level management standpoint, Plaintiff reported to Brittany Shiback ("Shiback"), the Administrator, and indirectly, to Andy Wolak ("Wolak"). Wolak was known as corporate management within Century overseeing Plaintiff's facility and all management therein (as centralized corporate management and human resources was utilized to direct and operate all similar facilities).

19. Plaintiff was terminated (following a near 2-week suspension) by Defendants effective on or about April 23, 2025, and Plaintiff contends her suspension and subsequent termination were motivated by unlawful discriminatory and retaliatory decision making explained *infra*.

[1] **FMLA INTERFERENCE & RETALIATION**

20. Plaintiff's husband has severe (life-threatening) disabilities. Such health problems include end-stage COPD, seriously impaired lung capacity, and a host of other medical complications.

21. Due to Plaintiff's husband having severe episodic flareups, medical appointments, and an inability to care for himself at times - - Plaintiff sought and was approved for intermittent leave under the FMLA later in her employment tenure.

4

22. The conditions of Plaintiff's husband have unfortunately progressively worsened over time, such that they were in fact at their most severe during Plaintiff's last year of employment with Defendants.

23. Plaintiff was utilizing a significant amount of intermittent leave under the FMLA towards the end of her employment, such that it was upsetting Shiback who had no hesitation in being vocal about her dislike of Plaintiff's FMLA usage.

24. Shiback, the highest manager overseeing Defendant LRHC, made many discriminatory comments toward Plaintiff. She told Plaintiff things like: "you are abusing FMLA," "you take too much time off," if your husband's condition keeps worsening, you will be taking even more time, and she claimed Plaintiff was "too distracted" because of her spousal care needs. These are just examples of a barrage of ignorant, inappropriate, and discriminatory comments towards Plaintiff.

25. The antagonism towards Plaintiff's FMLA needs by Shiback was extremely egregious. She didn't hang up her phone properly on one (1) occasion and yelled that Plaintiff is a "piece of shit" who is "never here" because of her FMLA usage and who calls off all the time.

26. Shiback was so hostile towards Plaintiff's FMLA usage that she was directing schedulers not to approve of Plaintiff's medical time off for her husband, completely obstructing Plaintiff's attempted FMLA usage.

27. Plaintiff had to interact with the regular scheduler and corporate overseer of scheduling to be able to use FMLA and have her time approved properly because of Shiback's unlawful directives (to obstruct her FMLA usage).

28. Plaintiff was also on numerous occasions threatened by Shiback with discipline or termination if she keeps calling out, where Shiback would say "even if it is for your husband."

5

29. Plaintiff expressed concerns of FMLA mistreatment to numerous levels of management, including to Shiback directly.

30. The hostile work environment on account of Plaintiff's FMLA needs and FMLA complaints of mistreatment continued through Plaintiff's pretextual termination (explained more below). And Plaintiff was terminated in close temporal proximity to all of this occurring.

**[2] REPORTING ILLEGALITIES AND WHISTLEBLOWING**

31. In January of 2025, there was a sexual assault incident amongst residents. In particular:

- KP (a resident) is known as a sex offender within Defendants' facility (and under Defendants' care).[1]

- DD (a resident) is wheelchair bound but can move around.

- DD reported to Jennifer Moses ("Moses") that his genitals were stroked by KP (hereinafter "the sexual assault").

- Moses reported to Shiback that the sexual assault occurred and/or had been reported to her by DD.

32. Plaintiff had observed no meaningful actions being taken as a result of the sexual assault and communicated with Shiback about what was occurring (or for that matter, what was not occurring). Plaintiff was told by Shiback that the police were contacted.

33. Plaintiff learned that neither the police, nor KP's parole officer, had been actually contacted by Shiback (or others within Defendants).

34. Plaintiff, a mandated reporter, was very concerned about the safety of residents around KP and that it appeared Defendants were actually trying to evade any form of reporting or investigation.

---

[1] Only initials of residents are utilized herein for privacy purposes.

6

35. Plaintiff became very vocal internally (within Defendants) about her concerns, and Plaintiff reported the sexual assault herself to numerous regulatory bodies including the Department of Health ("DOH"), the Attorney General, and the Office of State inspector General ("OSIG").

### [3] PLAINTIFF'S SUSPENSION AND TERMINATION

36. As a result of Plaintiff's complaints to outside agencies and mandated reporting, KP was charged criminally and Defendants have been undergoing a comprehensive investigation by outside authorities (and regulatory bodies).

37. On or about April 9, 2025, Shiback verbally admonished Plaintiff for complaining to agencies, demanded that Plaintiff withdraw and/or retract her complaints to outside agencies (as a condition of remaining employed), and further expressed that Defendants are operating through a provisional license and Plaintiff was putting that in jeopardy. Plaintiff was directly told by Shiback that Plaintiff was being placed on "administrative leave" because she reported the sexual assault to outside agencies. Plaintiff's husband heard much of this conversation, as Plaintiff was speaking on her speaker phone.

38. Plaintiff was then informed she was terminated effective on or about April 23, 2025: (a) despite being given no information as to why in advance; and (b) despite being given no opportunity to discuss whatever purported rationale Defendants would later base her termination.

39. After demanding a rationale for her termination, Plaintiff received a termination letter signed by Shiback and dated April 24, 2025, stating:

> April 24, 2025
>
> Julie Sabach
> 23 Farmhouse Road
> Mountain Top, PA 18707
>
> Dear Julie,
>
> This letter is to inform you that I have attempted to reach you, via telephone, on April 23, 2025, at approximately 10 AM and 5 PM and April 24, 2025 at approximately 1130 AM without success. These telephone call attempts are regarding your employment with Lakewood Rehabilitation and Healthcare Center. Your employment, with Lakewood Rehabilitation and Healthcare Center, has been terminated on April 23, 2025. You have been terminated for the failure to report an allegation of abuse per the Elder Justice Act as a Mandated Reporter on February 22, 2025. If you have any questions, please feel free to contact me directly at 570-735-7300, ext. 313.
>
> Sincerely,
>
> *[signature]*
> Brittany Shibak, NHA

40. Shiback had terminated Plaintiff for a completely made-up (false) reason claiming Plaintiff did not properly report a sexual incident involving the same resident (KP) **<u>nearly 2 months prior</u>** to Plaintiff's termination from employment.

41. Plaintiff's termination was absolutely absurd in that: (a) she didn't witness the incident directly in February 2025; (b) she was told it was being handled by upper management who had received such information; (c) Plaintiff was not warned, disciplined, or investigated for this issue in the months preceding her termination; and (d) nobody else was terminated to Plaintiff's knowledge for improper handling of the February reporting. And obviously - - Plaintiff was given an entirely different reason for being terminated than when she was placed on administrative leave.

8

**First Cause of Action**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**

42.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43.     Plaintiff was at all times during her period of employment an eligible employee for FMLA protection, and she met all statutory prerequisites for such protection(s). Indeed, Defendants characterized Plaintiff as being on and utilizing FMLA leave (intermittently).

44.     In close proximity to her termination from employment, Plaintiff was: (a) the victim of numerous discriminatory comments about her FMLA usage; (b) threatened with discipline or termination for use of FMLA; (c) impeded in usage of FMLA; (d) treated abusively and yelled at for using FMLA (e) dissuaded from FMLA usage by threats, obstruction, and negative commentary; and (f) she was suspended and terminated because of her FMLA usage, because of her complaints of FMLA mistreatment, and to prevent her from further utilizing FMLA.

45.     These actions as aforesaid constitute both interference and retaliation violations of the FMLA.

**Second Cause of Action**
**Violations of the Adult Protective Services Act ("APSA")**
**(35 P.S. §§ 10210.101 et seq.)**
**(Retaliatory Action / Intimidation)**

46.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47.     Plaintiff was an employee of Defendant, a "facility" under the Adult Protective Services Act 35 P.S. § 10210.103, as this term has been defined.

9

48. 35 P.S. § 10210.302(a) states that "[a]ny person having reasonable cause to believe that an adult is in need of protective services may report such information to the agency which is the local provider of protective services. . ." .

49. Plaintiff reported multiple abuse and concealment of abuse to Defendants' management and numerous authorities / agencies.

50. Plaintiff was suspended and then terminated after numerous concerns having been expressed in preceding weeks prior to such adverse actions.

51. 35 P.S. §§ 10225.302(e) further states that "[a]ny person . . . with knowledge sufficient to justify making a report or cooperating with the agency . . . ***shall be free from any intimidation*** by an employer or by any other person or entity. Any person who violates this subsection is subject to civil lawsuit by the person intimidated . . . ***wherein the person intimidated*** . . . shall recover treble compensatory and punitive damages . . . ."

52. Defendants violated 35 P.S. §§ 10210.302(e) because they intentionally retaliated against Plaintiff by suspending and terminating her as a way to intimidate her because she had knowledge of Defendants' abuse concealment and a sexual assault upon a resident of Defendants (which would have been sufficient to justify her making a report to an appropriate outside agency). Moreover, Plaintiff actually made reports to outside agencies.

53. Plaintiff was both suspended and terminated as a form of intimidation. As a consequence of Defendants' violations of the Adult Protective Services Act, Plaintiff has suffered damages.

**Third Cause of Action**
**Retaliatory Termination in Violation of the**
**Medical Care Availability and Reduction of Error ("MCARE") Act**
**(Whistleblower Retaliation)**

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. The MCARE Act defines a medical facility very broadly incorporating the definition of same from 18 Pa. C.S. § 3203. *See* Section 301 of MCARE Act. As defined, Defendant operates a "medical facility."

56. Plaintiff promptly objected to and reported an "incident," as defined in Section 301 of the MCARE Act. The "incident" at issue was a sexual assault, abuse, and concealment of abuse.

57. The MCARE Act prohibits any retaliatory termination of an employee for reporting a serious event or incident (of which Plaintiff reported), and the MCARE Act incorporates all remedies available under the Pennsylvania State Whistleblower Law.

58. Plaintiff's retaliatory termination thus constitutes a violation of the MCARE Act, as she is a whistleblower entitled to protections under all applicable state laws (as incorporated therein).

**Fourth Cause of Action**
**Violations of Pennsylvania Common Law**
**(Wrongful Discharge)**

59. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60. Plaintiff was terminated for, in good faith, reporting suspected child abuse as a civilly and criminally-responsible (mandated) reporter.

11

61.    There are no questions Pennsylvania common law permits a civil action against an employer for termination due to good-faith, mandated reporting. In *Parker v. Sch. Dist. of Phila.,* 346 F. Supp. 3d 738, 752 (E.D. Pa. 2018), the Court (in the context of school mandated reporting) explained:

> Pennsylvania law requires "school employee[s] [or] employee[s] of a child-care service who [have] direct contact with children in the course of employment" to report suspected child abuse. 23 Pa. Cons. Stat. § 6311(a). **Termination based on compliance falls squarely within the public policy exceptions under Pennsylvania law**. *See Krolczyk v. Goddard Systems, Inc.*, 2017 PA Super 159, 164 A.3d 521, 528 (Pa. Super. Ct. 2017) (plaintiffs stated a claim for wrongful discharge where they alleged that they were terminated for planning to report suspected child abuse).

*Id*. (Emphasis added).

62.    Plaintiff was terminated for being a mandated reporter, engaging in mandated reporting, and for contacting criminal authorities (a separate form of prohibited common-law wrongful termination). *See Rodgers v. Lorenz*, 2011 PA Super 154, 25 A.3d 1229 (Sup. Ct. 2011).

63.    Plaintiff's suspension and termination from employment for engaging in mandated reporting / contacting criminal authorities violated well-established public policy in this Commonwealth.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to promulgate and adhere to a policy prohibiting discrimination / retaliation in the future against any employee(s);

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, pension, and benefits;

    C.    Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions (where legally permitted);

    D.    Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable laws herein;

    E.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

    F.    Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

    G.    Plaintiff is to receive a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801

Date: May 19, 2025