**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JULIE SABACH<br><br>Plaintiff,<br>v.<br><br>NANTICOKE REHABILITATION AND HEALTHCARE LLC, d/b/a LAKEWOOD REHABILITATION & HEALTHCARE CENTER<br>and<br>CENTURY HEALTHCARE CONSULTING<br><br>Defendants. | CIVIL ACTION<br><br>CASE NO.: 25-883<br><br>(MEHALCHICK, J.) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PLAINTIFF'S CIVIL ACTION INDEFINITELY, WITHOUT ANY CRIMINAL CHARGES BEING FILED**

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s Christine E. Burke*

Christine E. Burke, Esq.
Attorney I.D. 308166
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
cburke@karpf-law.com
(215) 639-0801 phone
(215) 639-4970 fax
*Attorneys for Plaintiff*

Dated: May 29, 2026

## I. INTRODUCTION

A grant of a stay in the event of related criminal proceedings involving the same Parties is an "extraordinary measure," and the Defense asks this Court to stay this matter for an indefinite period of time – perhaps upwards of several years – despite that no one related to this action has been the subject of any criminal charges.

Plaintiff, Julie Sabach (hereinafter "Sabach") worked for Defendants (a skilled nursing facility)[1] as a Registered Nurse for a period of 8.5 years from December 2016 through her termination last April of 2025. Ms. Sabach pursues claims against her prior employer under the Family & Medical Leave Act ("FMLA")(interference & retaliation for taking leave), the Americans with Disabilities Act ("ADA")(associational discrimination related to her chronically ill spouse), and a host of retaliation claims[2] specifically surrounding Ms. Sabach having reported elder abuse (both internally and to external agencies). Exhibit A, attached hereto.

Ms. Sabach had been approved for and was taking intermittent FMLA in the months leading to her separation (and in particular for her husband, who was

---

[1] Defendant Century Healthcare owns and operates a number of different rehabilitation and healthcare facilities throughout Central Pennsylvania –Defendant Lakewood Rehabilitation & Healthcare (located in Nanticoke) is just one of those facilities.

[2] Ms. Sabach pursues retaliation claims under the Adult Protective Services Act ("APSA"), the Medicare Availability and Reduction of Error Act ("MCARE"), PA Common Law, and Titel VII.

suffering from end stage COPD). *Id. Passim.* Ms. Sabach claims she was subject to significant antagonism for having taken her FMLA, and endured derogatory comments about her husband's leave needs/illness. *Id.* In early 2025, a sexual assault occurred involving a resident at the facility. *Id.* In short, Ms. Sabach made escalating reports internally and externally regarding this incident, in line with mandatory reporting obligations. *Id.* Ms. Sabach was actually admonished for pursuing a complaint through external agencies, and by April of 2025, they terminated her claiming *she* somehow failed in her mandatory reporter obligations. *Id.* at p. 8 (a copy of the termination letter is actually copied into the Complaint). ;

This case is not in its "infancy stages," as it has been pending since May of 2025. The Defense Answered the Complaint (Dkt.:9), Answered the Amended Complaint (Dkt. No.:25), and the Parties have been engaged in extensive formal discovery since September of 2025. Defendants provided verified responses to interrogatories (signed by Brittany Shibak) dated Dec. 9, 2025. Exhibit B. The Defense claims the decision to terminate Ms. Sabach was made by Brittany Shibak (Nursing Home Administrator) and one Erica Bogart (Human Resources Director). *Id.* at Response No.: 3. There is no mention whatsoever in Defendants' current Motion that Bogart is not permitted to testify in this matter due to any criminal implications.

The Plaintiff timely issued formal deposition notices in February of 2026, to occur in March 2026. Exhibit C (including those for Shibak, Andrew Wolak and

Erica Bogart). Defendant did not decline to appear based upon any claim of criminal proceedings, but rather Jackson Lewis and Plaintiff's undersigned Counsel agreed to permit Plaintiff to pursue some ongoing disputes over written discovery and reschedule same. The first time anyone made any mention of any criminal proceedings was when Shibak's private counsel reached out via email on **April 2, 2026**, suggesting Shibak not appear *at all* for a deposition due to 5th amendment concerns. Exhibit C. The undersigned supplied Shibak's counsel with caselaw about how the 5th amendment is invoked in the context of a civil deposition, as a witness is not simply "excused" from appearing. *Id.*

By April 6, 2026, Plaintiff was alerted the Defendants had retained new Counsel (McNees Wallace) and needed extensions of the fact discovery end dates to get up to speed on the file. To that end, a consent Motion to extend was filed on April 8, 2026. Dkt. No.: 48. It was not until May 1, 2026, during a call about re-scheduling depositions that Defendants' attorneys stated their intention to pursue a Motion to Stay due to criminal investigations; this Motion of course, was filed on the docket on May 18, 2026.

According to Defendants' Motion, a criminal search warrant was executed on October 2, 2025.[3] While this search warrant was personally served on Shibak -

[3] Attached as Exhibit A to their Motion.

multiple cell phones were seized (for Registered Nurse Supervisors), not simply that of Ms. Shibak. *Id.* Despite indication of an active criminal investigation for particular patients, Shibak fully participated in discovery in this action, including verifying answers to interrogatories in the case

Moreover, while the Denke action seems to be of similar concern (at least in Defendants' briefing), the Defendants have strategically declined to file any Motion to Stay in Denke. Instead, they have pursued a series of preliminary objections substantively addressing the Plaintiff's claims in that case - as they likely deem that to be more to their advantage. They have not, however, notified the Court in Denke they cannot meaningfully participate in discovery or any other case related business due to any active criminal investigation. This is a public docket which speaks for itself.[4]

Neither Shibak nor Wolak are individually named in this action. Defendants ignore key concepts in civil employment disputes – *employees come and go all the time*, and it is not uncommon that an employee may resign/be fired, and may be unwilling or unavailable to cooperate or appear for discovery (including where employees move out of state). A company, however, will still defend themselves in the action. Defendants have already cemented their defenses to this case through

[4] A copy of that case is attached as "Exhibit B," to Defendants' Motion (CCP, Luzerne County: Docket No.: 202604265).

several Answers on the federal docket and through verified interrogatory responses, and a written termination letter memorializing the purported legitimate non-discriminatory reason for termination. If Shibak or Wolak (who isn't even listed as a decision maker in this action), decline to answer various questions based upon 5th amendment concerns, that is certainly their prerogative and legal right. However, there is no legal support for an indefinite stay in this civil rights case for criminal charges that may never come to fruition.

## II. PROCEDURAL BACKGROUND

Ms. Sabach filed her Complaint on May 15, 2025. Dkt. No.: 1. Defendants filed an Answer on August 14, 2025. Dkt. No.: 9. Ms. Sabach filed a first amended Complaint on November 26, 2025, and an Answer to that pleading was filed on December 10, 2025. Dkt. Nos.: 22, 25.

Two (2) formal scheduling orders were issued in this case, one in October of 2025, and a first amended scheduling order in March of 2026 (after Defendants retained new counsel). Dkt. Nos.: 14 and 36. Fact discovery is currently set to end on August 10, 2026. Dkt No.: 36.

## I. QUESTIONS PRESENTED

A. Whether Defendants satisfy their burden in order to obtain a stay of this civil action?

**Suggested Answer:** No

## II. LAW AND ANALYSIS

### A.) Standard for Seeking a Stay of a Civil Action Due to Criminal Matters

A district court has broad discretion to stay proceedings as an incident to its power to control its own docket. *Landis v. North American Co*., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). Staying a case is an extraordinary measure and criminal defendants have no generalized due process right to stay proceedings in a related civil action. *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994); *De vita v. Sills*, 422 F.2d 1172, 1181 (3d Cir. 1970). A party seeking a stay bears the burden of establishing that a stay is needed. *Landis*, 299 U.S. at 255. A stay of a civil proceeding is an "extraordinary remedy" and is generally disfavored. *See Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998); *Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010).

In deciding how to exercise its discretion, a court must initially assess to what extent the issues in the criminal and civil cases overlap, and consider the status of the criminal case, including whether the defendants have been indicted. *See In re Derivative Litig*., No. 06-2964, 2007 U.S. Dist. LEXIS 26906, 2007 WL 1101276, at *1 (E.D. Pa. Apr. 11, 2007). When determining whether to stay a civil case pending resolution of a related proceeding, courts consider the following factors:(1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been

indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest. *Barker v. Kane*, 149 F. Supp. 3d 521, 525 (M.D. Pa. 2016).

The Constitution does not generally require a stay of civil proceedings pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.1985); *SEC v. Dresser Indus., Inc*., 628 F.2d 1368, 1375, 202 U.S. App. D.C. 345 (D.C.Cir.1980). When deciding whether the interests of justice seem to require a stay, the court must consider the extent to which a party's Fifth Amendment rights are implicated. *Keating*, 45 F.3d at 324. However, '[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege.' *Id* at 326.

**(1) There is *minimal* overlap between this civil FMLA/ADA and PA Whistleblower Action, and the OAG's criminal investigation**

As this Court may have gleaned, the Defendants' brief makes minimal reference to Sabach's claims for any FMLA or ADA violations. Material issues in this case include Ms. Sabach's record of employment predating her FMLA invocation, the bases for her FMLA requests, including her own Fibromyalgia and her husband's medical conditions -- and whether or not the reason for termination

(documented) was merely a pretext to avoid dealing with her FMLA needs and her husband's medical needs any further. (Particularly given the facility was understaffed).

Ms. Sabach also plead whistleblower claims in the alternative under APSA, MCARE, PA Common Law and Title VII arising out of various reports she made to the facility and external agencies about patient neglect and other issues. Many of the record facts regarding Ms. Sabach's complaints are well documented, i.e. patient notes surrounding the incidents (and what was or was not reported in patient charting, which have already been exchanged), i.e. the investigation/audit and results provided to the facility (admittedly putting them on notice of Sabach's complaints) (already exchanged). Moreover, there are documented emails between Ms. Sabach and Eric Bogart regarding their investigation into what she divulged to the PA Department of Health, and Ms. Sabach wrote a formal statement as directed by them. To say the "issues substantially overlap" is a poor and vague generalization.

The AG's office has sought a significant volume of patient records and staffing evidence, to address criminal concerns well beyond the ambit of the narrow issues in this case. Quite frankly, the nature of charges sought to be pursued and whether they may come to fruition are all unclear. This is why Courts very rarely stay cases pre-indictment, as discussed *infra*.

**(2) The status of the criminal investigation weighs heavily against granting a stay in this action**

Notwithstanding the importance of the first factor,

> “The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned. The potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act.
>
> *Walsh*, 7 F. Supp. 2d at 527 (quoting Pollack, *supra*, at 203). "On the other hand, because there is less risk of self-incrimination, and more uncertainty about the effect of a delay on the civil case, *pre* indictment requests for a stay are generally denied." *Id.* (emphasis in original). Indeed, other courts have found that "the extent to which application of the first factor supports a stay is undercut by the fact that no criminal indictments have yet been issued." *Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 411 (S.D.N.Y. 2018). "Absent indictment, the scope and nature of the criminal investigation is unknown, leaving this Court unable to determine the extent to which an indefinite criminal case will eventually overlap[] with a pending civil action." *Id.* (citation modified).

*Sehoon Chang v. Able C&C Co. Ltd.*, Civil Action No. 23-cv-02590, 2025 LX 543604, at *8-9 (D.N.J. Dec. 17, 2025)(internal citations in original).

When considering stay requests based upon other litigation we are also enjoined that **"[s]tays of indefinite duration are especially discouraged . . . , because they put the parties 'effectively out of court**.'" *Structural Grp., Inc. v. Liberty Mut. Ins. Co.*, No. CIV.A 1:07-CV-01793, 2008 U.S. Dist. LEXIS 82266, 2008 WL 4616843, at *5 (M.D. Pa. Oct. 16, 2008). In various cases, including in this District, a Court is much more inclined to entertain a stay when the criminal proceeding is underway and a date for trial has been set. *See e.g. Woodward v. Sabo*, No. 1:19-CV-2048,

2021 LX 52814, at *4 (M.D. Pa. Feb. 3, 2021)("Officer Sabo is merely requesting a stay pending the outcome of Woodward's state criminal case. Woodward's criminal charges are scheduled for trial on March 8, 2021."); *and see e.g. Ribaudo v. Desimone*, No. 3:18-CV-01190, 2019 LX 48090, at *16 (M.D. Pa. Apr. 5, 2019)(granting stay where the "criminal case has proceeded past the initial stages—some of the charges have been pending since 2016 and some since 2018. We note that the dockets sheets from Ribaudo's criminal cases indicate that a hearing is scheduled for June 10, 2019.").

The status of the criminal case weighs against granting Defendants' request for a stay. The evidence presented (i.e. strictly a search warrant) indicates <u>only</u> that there is an ongoing criminal investigation. 1.) No charges have been filed against <u>anyone</u>. The Defendants have provided this court with no information regarding when, <u>if ever</u>, any charges will be filed.

**(3) The plaintiff has a significant interest in moving this civil rights case forward to depositions and a trial date to avoid prejudice**

Plaintiff was a career nurse with Defendants, having spent the last 8.5 years of her career there. Plaintiff (52) is suing for significant wage loss, pension losses, and uncapped claims for emotional distress and punitive damages under the statutes at issue. To be blunt, <u>the Defense has significant exposure in this case</u>. It is in Plaintiff's best interest to resolve the matter without delay in order to ensure that Defendants' assets are available to satisfy a possible judgment at the conclusion of

this litigation. An indefinite stay could permit Defendants to avoid liability in the interim while they could wind up business affairs and pursue potential bankruptcy or other closure mechanisms. Plaintiff has tangible economic losses and has still not mitigated the harm that has occurred; the only way to obtain relief is to push the matter forward to conclusion.

Both this Court and the public have an interest in moving forward with the civil matter rather than allowing an indefinite stay. Courts have an interest in judicial efficiency and" [t]he public has an interest in prompt resolution *Int'l Fidelity Ins. Co. v. Podlucky*, No. 07-0235, 2007 U.S. Dist. LEXIS 69539, 2007 WL 2752139, at *3 (W.D. Pa. Sept. 19, 2007). Plaintiff has brought a claim of employment discrimination, and "the public interest in deterring civil rights abuses weighs in favor of denying [a] stay." *Dohner v. Clearfield Cty*., No. 3:2008-52, 2010 U.S. Dist. LEXIS 156454, at *11 (W.D. Pa. Apr. 8, 2010)(internal citations omitted).

The Defendants (through Jackson Lewis) already notified Plaintiff **explicitly of potential spoilation issues and a failure to preserve**. Plaintiff was desperately trying to explore ESI preservation efforts, when the Defendants pivoted and sought a formal stay. Plaintiff served formal discovery related to potential spoilation on March 5, 2026 – and has yet to obtain any responses. This is certainly a crucial factor in assessing potential prejudice to Plaintiff. *See e.g. Diamond supra*, at *16-18 (D.N.J. Oct. 17, 2011)("an indefinite stay of this civil matter introduces the

potential for prejudice against Plaintiffs as discoverable evidence may become lost or destroyed in the nearly three years before the municipal matter is expected to resolve").

Plaintiff was a Union employee who consulted her Union at the time of termination. When the concession of failure to preserve arose, Plaintiff issued a third party subpoena to Plaintiff's Union to see if there were other emails out there beyond what the Defendants had produced. Sure enough, Plaintiff has already retrieved emails with Defendants' upper management and her Union about the termination --- that were not produced by the named Defendants, which raises clear concerns over spoilation. Staying this case indefinitely would have serious consequences on ESI retrieval, given proof of deletion already.

**(4) There is minimal burden on the Defendants, <u>if any</u>**

The alleged threat to witness Brittany Shibak and Andrew Wolak's rights are merely speculative. The Defendants have already i.) filed an answer cementing their defenses, and ii.) responded to written interrogatories setting forth the reasons for Ms. Sabach's separation from employment. Much of their defense is already supported in writing, and they have confirmed that Erica Bogart was intimately involved in the termination decision. Bogart – as Director of HR – is more than capable of speaking in a deposition about the bases for Ms. Sabach's separation. If anything, Plaintiff is the one prejudiced by not being able to fully cross examine

Shibk and Wolak. If those two individuals, however, choose not to testify on some or all topics based upon 5th amendment grounds, that is their strategic decision. *See e.g. Thummel v. PSI Transp., LLC*, No. 14-1299-MLB-KGG, 2015 U.S. Dist. LEXIS 9445, at *4 (D. Kan. Jan. 28, 2015)("The Court recognizes the potential legal and tactical consequences this may create.").

Defendants' primary reliance is on the *Barker* opinion. That case is materially different – as Kathleen Kane was a named Defendant in that action. Neither Shibak nor Wolak are named Defendants in this case. The company hasn't even articulated why Wolk would be even germane to their defenses. Any witness could add "helpful" testimony to a corporate defendant, but that doesn't make them akin to a party. Even trials are obligated to proceed where a witness is unavailable. If these charges are resolved (assuming they are *ever even brought*), Shibak and Wolak can make themselves available for fact witness depositions before a trial in this matter -- if they believe their testimony is pertinent to proving their claims.

**B.) Numerous Other District Courts have Denied a Stay in Cases Nearly Identical to this Case**

In *Simon*, the District Court denied a request for a 120 day stay in the following facts:

> defendants Crawford, Palombaro, and REC are the subjects of a "definitely active" criminal investigation by the Office of the United States Attorney for the western District of Pennsylvania. This investigation purportedly relates to defendants Crawford, Palombaro, and REC's involvement with the Northgate Mall, the Laguna Hills Mall,

> the South Hills Village, and the Miami International Mall proj ects. For this reason, the Construction Defendants argue that the instant civil matter should necessarily be stayed.
>
> The Construction Defendants further state that, in relation to the criminal investigation, government agents have executed search warrants at the principal place of business of defendant REC and the home of defendant Palombaro. Pursuant to the search warrants, the government has seized all electronic data and documents relating to the Northgate Mall and Laguna Hills Mall redevelopment proj ects at issue in the civil matter. Federal agents also served defendants Matthew D. Padgett and Joel D. Sencher with grand jury subpoenas for testimony to be given on February 4, 2009 and served defendant Palombaro with a grand jury subpoena for documents.

*Simon Prop. Grp., Inc. v. Palombaro*, Civil Action No. 08-1634, 2009 U.S. Dist. LEXIS 26265, at *5-6 (W.D. Pa. Mar. 30, 2009).[5]

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that Defendants' Motion to Stay be denied. This matter should proceed forward under the current scheduling Order.

---

[5] In an FMLA/OSHA whistleblower, defamation and sexual harassment suit, this District Court declined to issue a stay at Plaintiff's request, even where the Defendant's counter claimed were premised upon the same facts giving rise to potential criminal liability against the plaintiff. In denying plaintiff's request for an indefinite stay, the Court emphasized: "Given the statute of limitations for the crimes potentially implicated by Defendant's counterclaims, the requested stay could last years. The Court is unwilling to provide such extraordinary relief based on the circumstances presented." *Thummel supra*, at *5.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s Christine E. Burke*
Christine E. Burke, Esq.

*Attorneys for Plaintiff*

Dated: May 29, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULIE SABACH | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | CASE NO.: 25-883 |
| v. | : | |
| | : | (MEHALCHICK, J.) |
| NANTICOKE REHABILITATION AND HEALTHCARE LLC, d/b/a LAKEWOOD REHABILITATION & HEALTHCARE CENTER | : | |
| and | : | |
| CENTURY HEALTHCARE CONSULTING | : | |
| | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I certify on the date set forth below, that I served Defendants with Plaintiff's Response in Opposition to Defendants' Motion for a Stay:

MCNEES WALLACE & NURICK LLC
Erik Roberts Anderson (PA 203007)
M. Abbegael Giunta (PA 94059)
Sean C. Campbell (PA 321246)
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke*

Christine E. Burke, Esq.

Dated: May 29, 2026