IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE SABACH,<br><br>*Plaintiff*,<br><br>v.<br><br>NANTICOKE REHABILITATION AND HEALTHCARE LLC, d/b/a LAKEWOOD REHABILITATION & HEALTHCARE CENTER and CENTURY HEALTHCARE CONSULTING,<br><br>*Defendants*. | No. 3:25-CV-00883<br><br>(Judge Mehalchick)<br>(Chief Magistrate Judge Bloom) |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO STAY PENDING DISPOSITION OF PARALLEL CRIMINAL PROCEEDINGS**

**MCNEES WALLACE & NURICK LLC**
Erik Roberts Anderson (PA 203007)
M. Abbegael Giunta (PA 94059)
Sean C. Campbell (PA 321246)
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
agiunta@mcneeslaw.com
eanderson@mcneeslaw.com
scampbell@mcneeslaw.com

Date: June 12, 2026

*Counsel for Defendants Nanticoke Rehabilitation and Healthcare LLC d/b/a Lakewood Rehabilitation & Healthcare Center and Century Healthcare Consulting*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................... ii

INTRODUCTION ..................................................... 1

ARGUMENT ..................................................... 2

I. Defendants seek a defined 180-day stay, not the indefinite stay that Plaintiff opposes ..................................................... 2

II. Every stay-denial case Plaintiff cites turned on a fact this record lacks ..................................................... 4

III. *Walsh* is Defendants' case and it granted a pre-indictment stay on a record like this one ..................................................... 8

IV. Plaintiff's Middle District authorities applied *Barker* and granted stays ..................................................... 10

V. Erica Bogart cannot speak to motive; FMLA and ADA claims rise and fall with the whistleblower claims ..................................................... 12

VI. Defendants' litigation conduct shows no waiver, and Plaintiff identifies no cognizable prejudice ..................................................... 14

CONCLUSION ..................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Barker v. Kane*, 149 F. Supp. 3d 521 (M.D. Pa. 2016).................. 4, 10, 16

*Carlton v. Atl. Cnty. Just. Facility*,
2022 WL 16922151 (D.N.J. Nov. 14, 2022)..................................... 16

*Denke v. Nanticoke Rehab. & Healthcare, LLC*,
No. 202604265 (Luzerne Cnty. Ct. C.P. June 1, 2026) ................. 15

*Diamond v. Borough of Peapack Gladstone*,
2011 WL 4950169 (D.N.J. Oct. 17, 2011) ................................ 3, 4, 7

*Doe v. City of Scranton*, 2021 WL 1059485 (M.D. Pa. Mar. 18, 2021) ... 10

*Dohner v. Clearfield Cnty.*,
2010 U.S. Dist. LEXIS 156454 (W.D. Pa. Apr. 8, 2010).................. 7

*Heraeus Materials Tech. LLC v. Tung Pham*,
2011 WL 13227695 (E.D. Pa. June 29, 2011)................ 9, 10, 16, 18

*Int'l Fid. Ins. Co. v. Podlucky*,
2007 U.S. Dist. LEXIS 69539 (W.D. Pa. Sept. 18, 2007) ................ 5

*LM Ins. Corp. v. FAV Transp., L.L.C.*,
2015 WL 4915677 (D.N.J. Aug. 18, 2015) ..................................... 10

*Nat'l Life Ins. Co. v. Hartford Accident & Indem. Co.*,
615 F.2d 595 (3d Cir. 1980)..................................................... 15, 16

*RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*,
808 F.2d 271 (3d Cir. 1986)............................................... 11, 12, 13

*Rex & Roberta Ling Living Tr. v. B Commc'ns Ltd.*,
346 F. Supp. 3d 389 (S.D.N.Y. 2018) ............................................... 5

**Page(s)**

**CASES (continued)**

*Ribaudo v. Desimone*,
2019 U.S. Dist. LEXIS 60036 (M.D. Pa. Apr. 5, 2019) .......... 2, 4, 10

*Sehoon Chang v. Able C&C Co. Ltd.*,
2025 U.S. Dist. LEXIS 260603 (D.N.J. Dec. 17, 2025) ........... 3, 4, 6

*Simon Prop. Grp., Inc. v. Palombaro*,
2009 U.S. Dist. LEXIS 26265 (W.D. Pa. Mar. 30, 2009) ................. 4

*Structural Group, Inc. v. Liberty Mut. Ins. Co.*,
2008 U.S. Dist. LEXIS 82266 (Oct. 16, 2008) .................................. 2

*Thummel v. PSI Transp., LLC*,
2015 U.S. Dist. LEXIS 9445 (D. Kan. Jan. 28, 2015) ...................... 6

*United States v. Balsys*, 524 U.S. 666 (1998) .......................................... 6

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*,
7 F. Supp. 2d 523 (D.N.J. 1998) .................................. 3, 8, 9, 10, 16

*Woodward v. Sabo*,
2021 U.S. Dist. LEXIS 265086 (M.D. Pa. Feb. 3, 2021) ........ 2, 4, 10

**STATUTES**

18 Pa.C.S. § 2713 ............................................................................ 6

35 P.S. § 780-113 ............................................................................ 6

62 P.S. § 1407 ................................................................................ 6

**RULES**

Pa.R.Crim.P. 211 ............................................................................ 7

## INTRODUCTION

Plaintiff's opposition brief (Doc. 48) attacks a motion that Defendants did not file. Defendants did not request an "indefinite" stay. They requested a 180-day stay, with status reports every ninety days and leave to seek modification if circumstances change.[1] Even so, the opposition's answer is to repeat the word "indefinite"—in its title and throughout its argument—as if repetition could erase the end date. It cannot. A stay that expires on day 180 is not an indefinite stay.

The opposition has a second problem: it concedes the fact that decides the motion. Plaintiff posits that Shibak and Wolak may "choose not to testify on some or all topics based upon 5th amendment grounds."[2] But her exhibit proves that it has already happened. Shibak's defense counsel wrote that Shibak is "unavailable as a witness to be deposed pursuant to her fifth amendment privilege being asserted in the underlying criminal matter."[3] The invocation that Plaintiff calls speculative is documented in the record she filed.[4]

That concession separates this case from every authority Plaintiff cites. Her denial-of-stay cases fall into three groups. Some refused a stay because the Fifth Amendment risk was speculative and no witness had confirmed an invocation. Some

---

[1] Doc. 47 at 20; Proposed Order.

[2] Doc. 48 at 14.

[3] Doc. 48-3 at 2.

[4] Doc. 48 at 13; Doc. 48-3 at 2.

involved no Fifth Amendment interest at all. And some were brought by a plaintiff trying to freeze the very case she chose to file. None describes this case. And two of Plaintiff's authorities from this District—*Woodward* and *Ribaudo*—***granted*** stays under *Barker*, one with the very status-report structure that Defendants propose.

Defendants' motion to stay should be granted.

## ARGUMENT

### I. Defendants seek a defined 180-day stay, not the indefinite stay that Plaintiff opposes.

The opposition's theme, starting with its title, is that Defendants seek to stay this case "indefinitely" and "perhaps upwards of several years."[5] That is false. Defendants ask for a fixed 180-day term.[6] The stay lapses by its own terms when those days run, no matter where the OAG investigation stands; any more time would require a new motion.[7]

Plaintiff's own authority endorses this structure. Take *Woodward v. Sabo*. There, this Court quoted the *Structural Group* language that Plaintiff quotes—"[s]tays of indefinite duration are especially discouraged"—and granted the stay anyway. The stay there was bounded by a criminal trial already set for a date certain, and the court ordered a status report. No. 1:19-CV-2048, 2021 U.S. Dist. LEXIS 265086, at *3–6 (M.D. Pa.

[5] Doc. 48 at 1–2.

[6] Doc. 47 at 20; Proposed Order.

[7] Doc. 47 at 20; Proposed Order.

Feb. 3, 2021). *Walsh* resolved the same concern the same way. It explained that any "concern about an indefinite stay may be alleviated" by leave to "lift or modify the stay if there is a change in circumstances warranting it." *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 528–29 (D.N.J. 1998). Defendants' proposed order has both features: a fixed end date and a means of modifying the stay sooner.

Plaintiff cites *Diamond* and *Chang* for the proposition that a stay keyed to a criminal matter is impermissibly indefinite.[8] Neither case says that. Each refused a genuinely open-ended stay. *Diamond* addressed a request to halt a federal case pending a municipal trial that, after more than two years, was "not even half-way" done. *Diamond v. Borough of Peapack Gladstone*, No. 11-3703 (MLC), 2011 WL 4950169, at *6 (D.N.J. Oct. 17, 2011). The evidence-loss language that Plaintiff quotes responded to exactly that open-ended horizon. The court worried that "discoverable evidence may become lost or destroyed in the nearly three years before the municipal matter is expected to resolve." *Id.* And *Chang* refused to stay a case already "pending for over two years" in favor of a foreign investigation with "no definite timetable" and "no indication of when" charges might issue. *Sehoon Chang v. Able C&C Co. Ltd.,* No. 23-cv-02590 (KSH), 2025 U.S. Dist. LEXIS 260603, at *10–12, *17 (D.N.J. Dec. 17, 2025).

---

[8] Doc. 48 at 10, 12–13.

What *Diamond* and *Chang* condemned was not a triggering event that lay in the future. It was a stay with no fixed end—one that would have run exactly as long as the other proceeding ran, however long that turned out to be. Defendants' proposed order has the opposite design: it fixes the stay at 180 days. Pre-indictment timing leaves the criminal calendar uncertain, to be sure, but that uncertainty does not make this stay open-ended when the stay ends on a set date no matter what the investigation does. That is the bounded structure that *Woodward* approved, not the open-ended one that *Diamond* and *Chang* refused.

## II. Every stay-denial case Plaintiff cites turned on a fact this record lacks.

Start with weight. Not one of Plaintiff's denial cases binds this Court.[9] Each one is a district-court decision from outside this District—the Western District, New Jersey, the Southern District of New York, and Kansas—or an out-of-circuit court of appeals, and several are unreported. The only decisions from this District that either side cites granted stays. That is *Barker*. And so did Plaintiff's own *Woodward* and *Ribaudo*. On the law that governs here, the motion is not close.

Read in full, even Plaintiff's out-of-district cases prove Defendants' point. Each denied a stay for one reason: the Fifth Amendment risk was speculative or absent. Here it is neither.

---

[9] *See id.* at 7–15.

Plaintiff leads with *Simon Property*.[10] *Simon* denied a 120-day stay because "[t]he alleged threat to defendants[ ]' . . . Fifth Amendment rights is merely speculative." *Simon Prop. Grp., Inc. v. Palombaro*, No. 08-1634, 2009 U.S. Dist. LEXIS 26265, at *7 (W.D. Pa. Mar. 30, 2009). No lawyer there had confirmed that any witness would invoke. That is the opposite of this record, where two lawyers have.

*Podlucky* is worse for Plaintiff. The movants there filed no supporting brief and offered only "the specter" of a Fifth Amendment conflict, with "no concrete evidence" that any privilege would be implicated. *Int'l Fid. Ins. Co. v. Podlucky*, No. 07-0235, 2007 U.S. Dist. LEXIS 69539, at *7–9 (W.D. Pa. Sept. 18, 2007). Here counsel for both witnesses have confirmed the privilege—one of them in writing, on Plaintiff's own exhibit.

*Rex* denied a stay because no witness had refused anything. The court held that "before discovery has even begun, it is speculative to think that [the movant] will be deprived of critical evidence," and it invited renewal "in the event of a material change in circumstances." *Rex & Roberta Ling Living Tr. v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 412 (S.D.N.Y. 2018). Here, discovery is already underway, and counsel have confirmed the invocations—the material change that Rex contemplated has occurred.

*Thummel* does not help Plaintiff. It indicts her theory. The movant there was the plaintiff, who tried to freeze her own lawsuit to avoid discovery on the defendant's

[10] *Id.* at 14–15.

counterclaims, on nothing more than having been "contacted by law enforcement" and her own belief that charges were coming—no warrant, no subpoena, no criminal counsel. *Thummel v. PSI Transp., LLC*, No. 14-1299-MLB-KGG, 2015 U.S. Dist. LEXIS 9445, at *2 (D. Kan. Jan. 28, 2015). Here, Defendants are not plaintiffs dodging discovery in a case they filed. They are defendants protecting non-party witnesses in a case Plaintiff filed, and they seek a fixed 180-day term, not an open-ended one.

*Chang* is Plaintiff's most recent case, and it fails her twice. The investigation there was conducted by South Korean authorities, and the court held that the Fifth Amendment did not even apply to a foreign prosecution. *Chang*, 2025 U.S. Dist. LEXIS 260603, at *13–15 (citing *United States v. Balsys*, 524 U.S. 666 (1998)). And the movant's self-incrimination claim was "belied" by his own conduct. He had already answered the same questions in a voluntary interview. *Id.* at *15. Neither flaw exists here. The investigation is American, and no witness has waived anything.

Now set this record against those cases. OAG executed a multi-agency search warrant at Lakewood.[11] The warrant names three offenses on its face—18 Pa.C.S. § 2713 (neglect of a care-dependent person), 62 P.S. § 1407 (Medical Assistance prohibited acts), and 35 P.S. § 780-113 (controlled-substance violations)—and its first seizure category is the resident-on-resident sexual assault Plaintiff reported. The Affidavit of Probable Cause remains sealed on successive judicial good-cause findings.

[11] Doc. 47-1.

*See* Pa.R.Crim.P. 211. Shibak and Wolak each retained private defense counsel, and each lawyer confirmed that their client will invoke if deposed. Plaintiff noticed both depositions. And Plaintiff is helping herself to the fruits of the investigation. She has disclosed Investigator Gilmartin, a member of the Commonwealth's multi-agency warrant team, as her own witness.[12]

Nothing about these invocations is speculative. The uncertainty that decided every one of Plaintiff's cases is gone here, and it is gone in favor of a stay.

Plaintiff's two remaining denial cases involved no Fifth Amendment interest at all. In *Diamond*, the "parallel proceeding" was a municipal trial under a habitual-barking-dog ordinance, quasi-criminal at most and punishable by a fine, and the court found "no threat that Plaintiffs' Fifth Amendment privilege is at risk." *Diamond*, 2011 WL 4950169, at *5. The evidence-loss language Plaintiff quotes described that posture—a multi-year stay in a case with no privilege dimension at all.

*Dohner* is a parallel-proceedings case, but the alignment is inverted, and the inversion is the point. There the plaintiff was the one facing criminal charges, and she wanted to testify. She expressly waived the Fifth Amendment. *Dohner v. Clearfield Cnty.*, No. 3:2008-52, 2010 U.S. Dist. LEXIS 156454, at *7 (W.D. Pa. Apr. 8, 2010). The civil defendants sought the stay to delay the trial so a future conviction could

[12] Doc. 13 at 8.

impeach her under Rule 609(a). *Id.* at *8. With no privilege in play and discovery already complete, the only thing a stay served was the defendants' wish for impeachment evidence they did not yet have. That is why the court called the motion "an attempt to enhance their trial strategy." *Id.* at *9. Defendants here seek no advantage from a conviction. They seek to avoid adverse inferences they cannot rebut. The "deterring civil rights abuses" language Plaintiff quotes, *id.* at *11, was the public-interest tiebreaker against a movant with no legitimate stay interest. It does not transfer to a movant who has one. Here the public interest runs the other way. A brief stay protects an active criminal investigation into the neglect of care-dependent residents, Medicaid fraud, and controlled-substance violations—the very conduct Plaintiff says she reported.

## III. *Walsh* is Defendants' case and it granted a pre-indictment stay on a record like this one.

Plaintiff builds her status argument on *Walsh*'s line that pre-indictment requests are "generally denied."[13] She omits what *Walsh* did. *Walsh* granted a pre-indictment stay. The government there had executed search warrants, issued subpoenas, and confirmed target status, and counsel represented that the witnesses "will have to assert their Fifth Amendment privileges extensively, especially in interrogatories and depositions." 7 F. Supp. 2d at 527–28. The court held that a stay is available pre-

[13] Doc. 48 at 9–10.

indictment "if the Government is conducting an active parallel criminal investigation." *Id.* at 527. And it refused to manage discovery around the privilege, because even at argument, "counsel differed sharply on what types of questions would raise Fifth Amendment concerns." *Id.* at 527–28. That is the *Heraeus* point. Courts will not "become mired in managing motion practice regarding the applicability of the Fifth Amendment privilege." *Heraeus Materials Tech. LLC v. Tung Pham*, No. 11-2965, 2011 WL 13227695, at *1 n.1 (E.D. Pa. June 29, 2011).

Plaintiff says "no charges have been filed against anyone."[14] That is wrong, and her pleading proves it. The Amended Complaint alleges that "KP was charged criminally and Defendants have been undergoing a comprehensive investigation by outside authorities."[15] A criminal charge has already resulted from this investigation. And by Plaintiff's own allegation, the investigation extends to Defendants themselves. Plaintiff calls the criminal timeline too uncertain to justify a stay. Yet her pleading says the opposite.

The pre-indictment rule Plaintiff invokes is a tool for managing doubt.[16] Before charges, a court often cannot tell whether the privilege will actually be implicated. *Walsh*, 7 F. Supp. 2d at 527. Here, there is no doubt to manage. The warrant is executed, the affidavit is sealed, private counsel are retained, the invocations are confirmed, and

---

[14] *Id.* at 11.

[15] Doc. 22 ¶ 36.

[16] *See* Doc. 48 at 9.

the depositions are noticed. On facts like these, courts in this Circuit grant pre-indictment stays. *Id.*; *Doe v. City of Scranton*, No. 3:20-490, 2021 WL 1059485, at *2–4 (M.D. Pa. Mar. 18, 2021); *LM Ins. Corp. v. FAV Transp., L.L.C.*, No. 14-5424, 2015 WL 4915677, at *2–3 (D.N.J. Aug. 18, 2015); *Heraeus*, 2011 WL 13227695, at *1. Plaintiff wisely engages none of these decisions.

## IV. Plaintiff's Middle District authorities applied *Barker* and granted stays.

Two of Plaintiff's Middle District authorities—*Woodward* and *Ribaudo*—granted the very relief she opposes. *Woodward* applied the *Barker* factors, found the overlap "undeniable," answered the indefiniteness concern—the criminal trial was set for a date certain, and the court ordered a status report—and stayed the case. 2021 U.S. Dist. LEXIS 265086, at *3–6. *Ribaudo* did the same. It reasoned that without a stay, a party "may be forced to either waive his Fifth Amendment privilege against self-incrimination or forfeit his defense on disputed issues." *Ribaudo v. Desimone*, No. 3:18-CV-01190, 2019 U.S. Dist. LEXIS 60036, at *15–17 (M.D. Pa. Apr. 5, 2019) (citing *Barker*, 149 F. Supp. 3d at 528). Plaintiff distinguishes both only on the ground that the criminal matters there had progressed further. But neither case makes an indictment or a trial date a prerequisite. Both hold that in this District the forced choice between waiver and adverse inference is a burden that warrants a stay—not, as Plaintiff frames it, a witness's "prerogative."[17]

[17] Doc. 48 at 6.

Plaintiff's attempt to distinguish *Barker* proves Defendants' point. As Defendants explained in their opening brief, Shibak and Wolak are not parties, and their non-party status makes the prejudice greater, not smaller.[18] Shibak and Wolak are not corporations weighing litigation strategy. They are individuals whom Plaintiff would march into depositions across the very conduct a sealed warrant targets. In *Barker*, Kane was a named defendant. She held her own privilege and could waive it and testify in her own defense. Lakewood and Century have no such option. The privilege belongs to Shibak and Wolak personally, and the corporations can neither assert it nor waive it on their behalf. Wolak's silence is especially disabling. He is Century's chief executive—"corporate management within Century overseeing Plaintiff's facility and all management therein,"[19]—and the witness through whom Century's knowledge of the assault, its response, and the challenged employment decisions would be proven. With Wolak silent, the corporate defendant cannot put on the testimony its own defense requires.

The adverse-inference rule Plaintiff offers as a cure assumes the opposite of this record.[20] *RAD Services* permits an adverse inference against a corporation only because the corporation "could rebut any adverse inference that might attend the employee's silence, by producing contrary testimonial or documentary evidence." *RAD Servs., Inc.*

---

[18] Doc. 47 at 18–19.

[19] Doc. 22 ¶ 18.

[20] *See* Doc. 48 at 13.

*v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275 (3d Cir. 1986). An inference is fair only where the defendant can answer it. Here it cannot. The only witnesses who can speak to Shibak's statements and Century's oversight are Shibak and Wolak, and they will not speak. An inference the defendant has no way to rebut is not an inference. It is a directed verdict by another name.

**V. Erica Bogart cannot speak to motive; FMLA and ADA claims rise and fall with the whistleblower claims.**

Plaintiff leans on Defendants' interrogatory answer naming Erica Bogart as a co-decision-maker.[21] Her pleading shows why that solves nothing. The Amended Complaint never mentions Bogart. Its retaliation theory runs through Shibak. Shibak allegedly admonished Plaintiff for "complaining to agencies," demanded that she retract her external reports to keep her job, told her she was suspended "because she reported the sexual assault to outside agencies," and signed the termination letter.[22] Wolak, per the same pleading, was "corporate management within Century overseeing Plaintiff's facility and all management therein."[23] Bogart cannot testify to Shibak's statements, Shibak's motive, or Century's oversight—the facts Plaintiff put at issue—and she cannot rebut the adverse inferences drawn from their silence. At most, she can describe how the personnel process worked. She cannot supply the retaliatory motive

[21] *Id.* at 3, 13.

[22] Doc. 22 ¶¶ 37–41.

[23] *Id.* ¶ 18.

that is the disputed heart of every count, and that motive sits with Shibak and Wolak. *See RAD Servs.*, 808 F.2d at 275 (an adverse inference is permissible only where the corporation can rebut it).

Plaintiff's counsel forecloses the substitution. In the very email Plaintiff filed, her counsel argued that Shibak's privilege should be "limited in scope" because "this woman supervised [Plaintiff] for many years and was intimately involved in a personnel decision to terminate."[24] A witness Plaintiff's own record puts at the center of the firing is not one a human-resources designee can replace. And Plaintiff's conduct concedes the point. She noticed both depositions and pressed to take them.[25] These witnesses cannot be essential enough to depose and marginal enough to ignore at the same time.

Plaintiff's "minimal overlap" argument[26] fares no better. Her whistleblower claim is built on her report of the alleged sexual assault to outside agencies. That assault is the first subject of OAG's investigation. Her protected activity and the conduct under investigation are the same events. Plaintiff's own brief refutes her "poor and vague" label. She admits the AG "has sought a significant volume of patient records and staffing evidence,"[27] and she has disclosed warrant-team Investigator Gilmartin as her

---

[24] Doc. 48-3.

[25] Doc. 48 at 3–4.

[26] *Id.* at 8.

[27] *Id.* at 9.

witness.[28] Seeking the same records and naming the same investigator is not the absence of overlap. It is overlap. The FMLA and ADA counts change nothing. Plaintiff pleads one suspension and one termination, decided by one set of decision-makers, and her pretext theory is that the stated reason for the firing—a supposed failure to report the KP incident—was a cover for retaliation.[29] Whether that reason is true or pretextual cannot be litigated without litigating the institutional response to the KP incident, which is the first subject of OAG's warrant. Discovery into pretext is discovery into the conduct under criminal investigation. There is no separate FMLA lane in which Shibak and Wolak could testify freely.

**VI. Defendants' litigation conduct shows no waiver, and Plaintiff identifies no cognizable prejudice.**

Plaintiff says Shibak verified interrogatory answers in December 2025 and that Defendants litigated for months before moving.[30] That is not waiver. Litigating a case does not relinquish the right to seek a stay, and waiver requires knowingly surrendering a known right, not the passage of time.

The timeline also defeats any suggestion that this stay is a surprise. Plaintiff noticed the depositions in February 2026.[31] Shibak's personal counsel, Christopher

---

[28] Doc. 13 at 8.

[29] Doc. 48 at 9.

[30] *Id.* at 3.

[31] *Id.*

Caputo, told Plaintiff's counsel on April 2, 2026 that Shibak would assert the privilege—before current defense counsel had entered this case.[32] The *Denke* complaint, alleging a second, post-warrant assault and citing this case by docket number, was filed April 7, 2026. Plaintiff has known this motion's central fact—that Shibak will invoke—since April 2. A motion built on a fact Plaintiff has held for two months is not a tactic. It is a response to the record.

Plaintiff's remaining waiver theme is that Defendants "strategically declined" to seek a stay in *Denke*.[33] That is now false. Defendants moved to stay *Denke* on June 1, 2026, on the same grounds asserted here—the same investigation and the same confirmed invocations.[34] Plaintiff's opposition, filed May 29, predates that motion by three days. Defendants seek the same relief, for the same reasons, in both courts.

Plaintiff's April 2 email proves Defendants' point, not hers. She represents that she gave defense counsel authority holding that a witness "is not simply 'excused' from appearing" and must invoke question by question.[35] Defendants do not dispute that rule. But it answers a question this motion does not ask. *National Life* governs whether a witness must appear, not whether a civil case should be stayed during an active

---

[32] Doc. 48-3.

[33] Doc. 48 at 5.

[34] Defs.' Mot. to Stay, *Denke v. Nanticoke Rehab. & Healthcare, LLC*, No. 202604265 (Luzerne Cnty. Ct. C.P. June 1, 2026), attached as **Ex. A**.

[35] Doc. 48-3.

criminal investigation, and it does not apply the *Barker* factors.[36] Worse for Plaintiff, the procedure she champions—appear, then invoke topic by topic across the very conduct under investigation—is the piecemeal Fifth Amendment litigation that *Walsh* and *Heraeus* say a stay prevents. Plaintiff has not rebutted the motion. She has illustrated the need for it.

On prejudice, Plaintiff must show a particularly unique injury, not the ordinary delay of a stay. *Barker v. Kane*, 149 F. Supp. 3d 521, 528 (M.D. Pa. 2016). She shows none. She points to no specific, non-speculative harm that a defined six-month stay would cause, and delay alone is not the particularized prejudice the standard requires. *See Carlton v. Atl. Cnty. Just. Facility*, No. 21-5259, 2022 WL 16922151, at *3 (D.N.J. Nov. 14, 2022) (quoting *Tucker v. N.Y. Police Dep't*, No. 08-2156, 2010 WL 703189, at *7 (D.N.J. Feb. 23, 2010)). Her one concrete assertion—that Defendants "could" wind down and "pursue potential bankruptcy"—is rank speculation.[37] It is the asset-dissipation argument *Walsh* rejected, absent evidence of flight or gamesmanship. 7 F. Supp. 2d at 528. Defendants have produced their financial information and remain operating, licensed entities. A stay costs Plaintiff time, and Defendants do not pretend

[36] *Nat'l Life Ins. Co. v. Hartford Accident & Indem. Co.*, 615 F.2d 595, 598–600 (3d Cir. 1980), holds only that a deposition witness may not refuse to appear by asserting a blanket Fifth Amendment privilege before any question; he must appear and invoke question by question. That is a rule about how the privilege is raised at a deposition, not about whether to stay an action. It does not apply the *Barker* factors.

[37] Doc. 48 at 11–12.

otherwise. But time is all it costs her—every claim preserved, every deadline reset on the other side. What discovery would cost Shibak and Wolak is not recoverable at all.

Plaintiff's spoliation argument conflates two questions that have nothing to do with each other.[38] Whether evidence was preserved is one question. Whether this case should be stayed is another. A spoliation problem, if one exists, is the same problem with or without a stay—no better if discovery resumes tomorrow, no worse if it resumes in six months. A stay suspends litigation, not preservation. Plaintiff's concern[39] is about email and electronically stored information, not the records OAG may have seized, and a stay neither causes nor compounds any such loss. Defendants' duty to preserve continues in full during any stay, and any preservation failure Plaintiff attributes to prior counsel has already happened. The remedy for past spoliation, if any, is a spoliation motion—which Plaintiff remains free to file, and Defendants to answer, stay or no stay—not the denial of this motion. Nor will Defendants use the stay to avoid the issue: they will respond to the preservation-related portions of Plaintiff's March 5, 2026 discovery even while the stay is in place. The patient-care records OAG may have seized sit preserved in its custody, and the union emails Plaintiff describes are already in her possession.[40] There is nothing left for a stay to put at risk.

---

[38] *See id.* at 12–13.

[39] *Id.* at 12.

[40] *Id.* at 13.

Nowhere does the opposition deny that Shibak and Wolak will invoke. Nowhere does it explain how a corporation rebuts an inference drawn from witnesses it cannot call. Nowhere does it answer *Heraeus*—the judicial-economy cost of litigating the privilege question by question. And nowhere does it answer the central harm: that once Shibak's and Wolak's testimony reaches the prosecuting agency, no later order can take it back. Silence on the dispositive harm is not opposition to it.

## CONCLUSION

For these reasons, along with those in Defendants' opening brief, the motion to stay should be granted.

Respectfully submitted,

**McNees Wallace & Nurick LLC**

Date: June 12, 2026

By: */s/ Erik R. Anderson*
Erik Roberts Anderson (PA 203007)
M. Abbegael Giunta (PA 94059)
Sean C. Campbell (PA 321246)
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
agiunta@mcneeslaw.com
eanderson@mcneeslaw.com
scampbell@mcneeslaw.com

*Counsel for Defendants Nanticoke Rehabilitation and Healthcare LLC d/b/a Lakewood Rehabilitation & Healthcare Center and Century Healthcare Consulting*

## CERTIFICATE OF WORD-COUNT COMPLIANCE

Pursuant to M.D. Pa. L.R. 7.8(b)(2), the undersigned certifies, subject to Fed. R. Civ. P. 11, that this reply brief contains 4,093 words, exclusive of the caption, signature block, and this certificate and the certificate of service, as counted by the word-count feature of the word-processing system used to prepare the brief. The brief therefore complies with the 5,000-word limit prescribed by L.R. 7.8(b)(2).

Date: June 12, 2026

*/s/ Erik R. Anderson*
Erik Roberts Anderson
PA Attorney I.D. 203007

# CERTIFICATE OF SERVICE

I certify that on this date, I served this document by Notice of Docket Activity sent automatically by CM/ECF upon counsel who are registered as CM/ECF filing users who have consented to accepting electronic service through CM/ECF.

Ari R. Karpf
Christine E. Burke
**Karpf, Karpf & Cerutti, P.C.**
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
cburke@karpf-law.com

*Attorneys for Plaintiff*

Date: June 12, 2026

/s/ *Erik R. Anderson*
Erik Roberts Anderson
PA Attorney I.D. 203007